May it please the Court, I am Deborah Israel and I have the privilege of representing the appellants Pulte Home Company and Shiloh Farm Investments in this case. Your Honors, Pulte is not challenging the prohibition of a particular use, like in Siena, or the merger of lots, like in Quinn, or the denial of a special zoning designation, like in Sylvia, or the denial of a plan approval, like in Gardner, or the denial of a special exception, like in Beezer. Pulte is not asking this Court to force the County to provide something new to Pulte. Pulte is just asking that the Court not allow the County to take away what Pulte already had. The basis for that in your briefs, that argument, is that your client bought and recorded the TDRs. Is that the main basis for your argument, that you have a property interest? It's certainly part of it. So with respect to the due process argument, Your Honor, that's where you're headed with it. These, as I understand, these are not recorded as to any particular property. In other words, you buy them, and in fact, your client could sell them. The fact that they're recorded doesn't indicate what property they're going to be applied to, correct? Well, the County intended it. We argue, Your Honor, that there's no authority, there's no statute, and there's no case that stands for the proposition. That the TDRs don't attach to a specific property. And this is a legislative scheme. It's set up by the Functional Plan Amendment, excuse me, the Functional Plan Amendment. But isn't it true that the recording doesn't indicate what property it attaches to, but the receiving property is not indicated anywhere, and in fact, your client could resell them before using them. Is all of what I said true? Yes, and more, if I may, Your Honor. A developer buys transferable development rights to develop property. If you buy the transferable developed zone, the receiving area, and you buy and record the transferable development rights under the scheme, including both the 1980 Functional Plan, which sets up the Ag Preservation Area, and the TDRs. Do you still sell them on the open market? If you're a speculator, perhaps, but Pulte wasn't speculating. Where is your constitutional claim? You're on the due process, Your Honor? So the property just doesn't come into play for either the takings or for the equal protection? Just for the due process? Could you hold on for just a second? I don't understand. This Court has always been skeptical of these different constitutional claims displacing local decision-making and tying up local decision-makers in knots. And the Supreme Court has backed us up only recently in the Murr case, which is not favorable from your standpoint. Actually, we think it is, Your Honor. Because in the Murr case, if I may... What is your constitutional claim? There are four constitutional claims. Two due process claims, an equal protection claim, and a takings claim. So there are four. And they are made both in mirror ways with respect to the Maryland Constitution, the Maryland State, and the United States Constitution. And, Your Honor, if I may, with respect to the cases that you are thinking of as it relates to due process, those are situations where we're talking about special use exceptions. How many times have we... A gardener was a cul-de-sac, I think. Could you hold up? Yes, Your Honor. I'm chomping at the bit. I apologize. I appreciate your enthusiasm about your case. But how many substantive due process claims does this court recognize? Judge Niemeyer, and I think it was Sylvia Development, said that the local board had to be almost irrational beyond belief to give rise to a substantive due process claim. It has to be arbitrary, capricious, and then some. And that's what he said in Sylvia Development Corporation. And no substantive due process, that can be a little contentious to begin with. But there isn't anything that's arbitrary and capricious about amending a master plan which says it's likely to be amended and down zoning someone's land to an agricultural classification in order to protect certain lands in the county, which if they're open to development, might not be able to be reclaimed. If the county says, as this county did, that it needs science, it does not have the science in-house in order to make the determinations it wants to make, in order to study the hydrology, in order to study Ten Mile Creek, and then it hires those scientists, and then those scientists tell it, you can't do exactly what you're doing here, and the county disregards it, that's arbitrary. So, for example, the experts told them, these waters, these tributaries are all draining into Ten Mile Creek. You have to treat them equally. It's not our job to say you hired the wrong experts, or we disagree with the experts' opinions, or to tell the county how to proceed on these kinds of things. It's not the standard, though. If you take, for example, the arbitrary and capricious standard, you're just asking the question whether it's rational, whether it's rationally related. And so we look at whether or not what they did is rational. And if you say, I do not possess the expertise to make a decision, and you reach out and you hire experts, and those experts tell you, you should use, for example, 888 as your impervious cover. The experts are not the Board of Supervisors of the county. The county is not bound by the experts. They're not bound by them, but you still have to aim. You're right, they're not bound. But the standard, you can't make it unreviewable. The standard has to be measured against something. And they set the standard themselves. You measure it against the master plan and whether the master plan set forth a rational basis for the county's actions. And here the master plan explained why the county did what it did. The county did not even regard, they made the decision with respect to downzoning without even considering the policy or the application of TDR zoning. There is a functional master plan in play. It's not referenced in the limited amendment. It's not even considered. The fact of TDR was not even dealt with. So that's your property interest for your due process claim, is the TDRs? Well, the TDRs have a property interest unto themselves, under Penn Central, under all of the precedent. So the TDRs, we believe, have a property interest. And together, the TDRs perfect the TDR zoning interest in the RE-1 TDR-2. It's residential zoning. Developers buy transferable development rights to develop their property. This is not the case of the TZDs that I believe Judge Niemeyer had in the Sylvia case. But what commitment was there on the part of the county when your client bought these TDRs that your client could develop it in the way that they envisioned? Say that again, Your Honor. I'm sorry. So your client buys these TDRs. Yes. And they have this expectation that they're going to develop the property in a certain way. What was binding on the locality about that expectation? The locality approved it. So first, they bought the TDRs. What do you mean they approved it? First, they buy the TDR property. Then they buy the TDRs. In order to buy the TDRs, the county attorney has to review and approve the transfer and its recordation. So the county knows. Also, Poteet submitted a pre-concept plan. Excuse me, please, Judge Jones. The county doesn't know, is not required to know where the TDRs are going to be used. But in this instance, Your Honor, we allege, and it is a fact, that they did know. We were having discussions with them, and we submitted a pre-concept plan to actually go through this. So they knew. And here's what we're saying. So are you saying your client was legally bound that it could only use TDRs in this way, that they couldn't have sold them to somebody else or used them somewhere else? I'm saying that when the county sets up a scheme. I think that's a yes or no answer to the question I ask you. Well, now we believe they're wiped out. That's what we allege. So could you sell them? That's not an answer to the question.  You could only sell them, Your Honor. It presumes a market. This is not a case like Sylvia. Let's talk about the TZDs. In the TZD case, that appellant didn't have the property. He had it under contract. He hadn't bought it. He didn't have the TZDs. The TZDs weren't part of a master plan. They were simply a ZTA. It was simply an ordinance. Which constitutional claim are you arguing now? Well, all of them, really. But the due process, if you think about it. Because you are thinking about the scheme of the way that the TDR legislation works. And this kind of a scheme has been looked at. And Your Honor referenced the Niemeyer case and Sylvia by Judge Niemeyer. And so that is a TZD claim. It's not the first time that the court's looked at it. But that particular case is different because the TZD claim in that. We would say there's no relationship in the sense that that owner hadn't bought the property. Hadn't bought any of the TZDs. Was just asking to have it designated. We had the designation and lost it. One of the points that's made in our opinion over and over. Is that where there is a particular master plan and zoning plan. As a discretionary element to it. Allows the county to make zoning changes. For due process purposes. After the initial property interest. There's no property right. And here the master plan puts you on notice. About the changes of life here. The conditions change. That different environmental threats emerge. That different patterns of development within a county emerge. And that as a result of these changes. Changes in zoning classifications are possible. You would put on notice about that. And when that kind of discretion is reserved in a master plan. To the county. Before we even get to whether something is arbitrary and capricious. There's the antecedent question of whether there's a property right involved. And under a number of our decisions. The reservation of discretion to the county means you have no property right. Under the Maryland law. They have looked at legislative schemes. Like Blantlinger and the Casey case. And they have said the legislature can create a protected property right. And this court has also looked to the state law. And so we didn't just argue the federal law. We argued the state law. Which this court often. We listen to the oral argument in Siena. The federal constitution does not recognize failed due process. Equal protection and takings claims. The Maryland court of appeals for property rights. Has said in Blantlinger. And it reaffirmed Casey. That you can have property rights now. In Maryland. In more ways than just what used to be the limited vested common law way. Now you can have them legislative created. And then if you look at Maryland reclamation. The court does an eight page analysis with all of the tests. An investment of discretion in a board. A reservation of discretionary authority. In a board of supervisors. Or a planning commission. Or whatever local authority it is. That investment of discretionary authority. Is put in there. Not to create. A vested property right. That's going to tie up local decision making authorities. From responding to the changes that occurred. In every locality. Environmental changes. Development changes. You know. Communities are not the same 10 or 20 years ago. As they were at the time that the master plan was adopted. And to say that they can't amend it. To respond to changes in the jurisdiction you would say were elected. Is just crazy. We haven't said that your honor. We agree with you. We do not think it's the case that they can't amend. We think it's the case that it has to be rationally related. And we are asking the court to apply the test. And we are asking for the opportunity. Because we think we've pled it pretty specifically. In 70 pages and 126 specific allegations. We think we've pled that the facts demonstrate that we have a claim. That they didn't actually tie what they did to what they said they were going to do. Which they are obligated to do under law. That's the test. And the allegations are very clear about the ways in which we believe protecting 10 Mile Creek. Which is not on the Pulte property. Protecting 10 Mile Creek wasn't done. And couldn't be done under the methodology that they were using. Take it to the zoning authorities in Montgomery County. And if you don't like the decision, take it to the Board of Zoning Appeals. And if you don't like the decision, take it to state court. We did keep it in a state court framework, your honor. The government sought to have you review it. I understand how quickly they got here. And that they removed it. But that doesn't elide the fact that you're still using a bouquet of federal claims. Such as the process of equal protection class of one. Which has probably never been recognized after the Willard and Kennedy decisions. And taking these claims. Whether it's state court or federal court. You're trying to use a bouquet of federal constitutional claims to displace local government. And to have the federal courts take the decision-making authority out of the hands of elected officials. And while we're talking about property rights. Property rights and environmental considerations don't have to be antagonistic. Property rights often depend and property values often depend on sound environmental conditions. And zoning helps to preserve the value of property. It's done in the right way. We're not talking about antagonism for property rights. In many cases we are talking about preserving the value of homes. The value of property rights within a particular jurisdiction. Two points in response, your honor. First, the courts could if they did not want to hear these cases. We filed a motion for remand. The courts could abstain or the courts could remand. We are in a circumstance where if there's an unwillingness to review these cases. Because of the issues of federalism. That bumps up against the insulation factor that a government can use simply by removing to federal court. That can't be right. With respect, because it's an unjust result. It makes no review at all. It renders no review or results in no review at all. And then with respect to the property rights. This court has looked to state law. State law has now established legislative schemes. That is something that wasn't even considered. Wasn't even addressed by the court. Thank you very much. Thank you, your honor. Mr. Feldman, we would be pleased to hear from you. Good morning, your honors. May it please the court. My name is Howard Feldman and I represent Montgomery County. With me is counsel for Montgomery County, Mark Leonard. And I'm also speaking today on behalf of the Maryland National Park and Planning Commission. Thank you for your attention. One thing I really want to clear up right out front is while Ten Mile Creek itself doesn't flow through appellant's property, three tributaries, two of which originate on its property, flow right into Ten Mile Creek. Ten Mile Creek flows into a lake, which is a backup source of drinking water for the citizens of Montgomery County. Counsel explained the primary infirmity with their argument and why it's incongruent with the standard of review applicable to their equal protection and substantive due process claims. And that is they want to retry the science. The rational basis standard applicable to their protection claim and the standard applicable to their substantive due process claim don't permit the district court to weigh, with the rules of evidence and a preponderance standard, evidence considered by a political body. If there's no property interest, we wouldn't get to that point. You're right, your honor. And with respect to the property interest, there is none. And the fact that there's no property interest is fatal to both of their due process claims and also to their takings claim, as your honor recognized in the Quinn case from last year. As I understand the opposing counsel's argument on the property interest, it is transferable development rights, once recorded, give them an entitlement to develop the property in the way that they had envisioned, which would include requiring the county to provide certain sewer and water services. Is that how you understood their claim of a property interest? I understand that they're trying to circumvent a well-established vested rights rule in Maryland. There are three reasons why they don't have a cognizable property interest. One is Gardner discretion, which your honor pointed out. Second, they don't have a right to water and sewer under both federal and Maryland law. That's the NEFRT, the Front Royal and the Front Royal decisions, and others cited in our brief. Just last term in Quinn, we said that there's no property interest in water and sewer. And your honor cited NEFRT, the Maryland case that stands for that same proposition under Maryland. That's correct. With respect to how they're trying to circumvent the well-established vested rights rule, the most recently recognized by your honor in the Sienna decision from last year, is whether TDR somehow gives them a claim. And they're trying to manufacture, just like the plaintiff in the Quinn case, a property interest where none exists. And how are they trying to do that? They say they bought TDRs. Your honor is right. When a purchaser buys a TDR, the county reviews it because it places an easement on the seller's property. Nobody is on notice of any kind what property a developer or a buyer of TDRs intends to use them on. And county law is very specific and clear, as is the master plan. The county can take the TDRs they bought and apply them to another qualified area other than what's the subject of this case. Correct. Or they might decide, we've decided not to develop at all and we'll sell it. Also correct. And I invite the court to look at pages 537 and 538 of the joint record appendix. That's pages from the master plan where it's clear that the use of TDRs is not final until the filing of a final plate, that there's discretion within the planning board to approve how many would be used, and that a request has to be made to use TDRs. There would be no reason for a request to be made to the planning board to use TDRs if just by buying TDRs they were fixed. And if you think about it, what do they say? If someone buys one TDR, do they then stop the county from changing the zoning in any TDR receiving zone throughout the county? And what if they hold that TDR for a year or five years or 25 years? Is the county stopped for that long just because somebody buys a TDR and hasn't started the process to gain permission to use it on a designated piece of property? From a policy standpoint, the argument simply makes no sense. Counsel also mentioned that appellants are trying to circumvent the vested rights rule, and she mentioned, and I'm glad she mentioned it, the decision in the Blatlinger case. That case had to do with development rights agreements. Development rights agreements are a narrow legislative response to the vested rights rule created by the Maryland General Assembly. Those are contracts that municipalities enter into with developers to freeze their rights. That's not what they're claiming to have, and that's not what they're claiming to have here. Interestingly, at pages 571 and 572 of the Blatlinger case cited by counsel, there's some discussion of the legislative history of the law that gave rise to these development rights agreements. And the legislative history cites some committee reports which discuss the so-called vesting problem in Maryland and describes how states have addressed it in two ways. One, with development rights agreement, which is what Maryland did, that limited exception, and by outright prohibiting local governments from applying new regulations to ongoing projects by defining when vesting occurs. And in its wisdom, the Maryland legislature decided on a narrow, limited approach. The Maryland legislature, in its wisdom, wanted to abrogate the vested rights rule in toto or in other defined circumstances. It could have done so, but it chose not to do so. So I think it's clear, Your Honor, that there is six ways to Sunday in this case. There is no cognizable property interest because of the discretion under Gardner and its progeny. Time after time after time, this court and the district courts within this district have dismissed cases where there's any discretion, any, vested in the local... All of the courts within the circuit that we have to repeat these propositions over and over and over again, even after the Supreme Court's decision last term in here. And that this is still a constant effort to displace local zoning artists and put them in the federal courts who claims, like subsidy process, class of one equal protection. They're just very self-recognized. And the Supreme Court is cognizant of property rights, but they're not going to go for anything like this. And we have to repeat these propositions over and over. The district courts have to repeat the propositions over and over. And courts of appeals everywhere have to repeat these propositions over and over. And we're not school boards. We're not zoning boards. We're not a whole lot of things that people try to make us into. At any rate... I appreciate your observations, Your Honor. With respect to the equal protection claim, which I want to focus on a moment, because it's not an element of that claim that appellants have had a cognizable property interest, unlike their other claims, which the lack of a property interest is fatal to. Your Honor mentioned OLEC, and that's... And as you all know, the equal protection clause protects against class-based discrimination. And appellants concede that they're not part of a class that has been discriminated against. That's why they're seeking to be defined. I mean, to point out the obvious, class of one claims are very seldom recognized. And the reason is that a lot of decisions are very individualized. And among the decisions that are very individualized decisions are zoning decisions. And the calls that local zoning boards make, it depends on the characteristics of a particular property. It depends on the zoning plan of a particular property. It depends on the context of the development and surrounding acreage of a particular property. It depends on what obligations the developer is going to undertake. And as a result of negotiations with the county, they're very individualized. And so they differ dramatically somehow. It's the last field in the morning to recognize a class of one equal protection. That's exactly right, Your Honor. And that's why an inquest and recognize that typically zoning cases involve much discretion. And therefore, it would not be proper to have a class of one case in a matter involving zoning decisions. Those things are as rare as four clovers. The equal protection claim also failed because nowhere in that long complaint was there a mention of any similarly situated party. That's an element of the equal protection claim. If the complaint doesn't allege a similarly situated party, that claim fails as a matter of law. And third, the allegations don't pass muster under the rational basis standard of review. As the Supreme Court said in Beach, we say this in our brief, legislatures are not required to articulate reasons for enacting statutes. Legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by data or empirical evidence or empirical data. And rational speculation here would be if the county council, before adopting the amendment, which appellants complain about, didn't take evidence from scientists, didn't hear from stakeholders, but said, hey, you know what? It makes common sense to us that development's going to impair a precious environmental resource, a creek that flows into a source of drinking water. That would be rational speculation, and that would pass constitutional muster under the equal protection clause. But here, the county council went way beyond that as described in the amendment,  and property owner may disagree, but that disagreement isn't subject to rules of evidence and courtroom fact-finding as to whether a legislature, which is a political body and subject to all kinds of evidence, only has to reach a decision, support its decision if it's plausible. And I don't think you can say that the decisions reached by the county council in this case with respect to the amendment were just implausible. And you have to come to that conclusion for the equal protection claim. Is there anything further, Mr. Kellman? I'm sorry? Is there anything further? No, thank you, Your Honor. We have no questions. Thank you. We have no questions. You have some rebuttal time. Thank you, Your Honor. Thank you. I have four basic points that I'd like to cover, if I may. First, this is highly distinguishable from Quinn. Quinn was a merger lot case. No one took Quinn's zoning. Quinn bought his lots and didn't perk. He couldn't even put septic on them. He hoped someday, somewhere, maybe sewer would make its way there. This is not like that at all. This is a downzoning case. Pulte and Pulte alone was downzoned. On the issue of similarly situated, we plead similarly situated everywhere in the complaint. We plead it over and over again. But just for one example, I'm looking at paragraph 58. It is amazing to me to hear the counties say they don't know what the similarly situated properties are. The county identified the Ten Mile Creek Watershed. It's only the properties in the Ten Mile Creek Watershed, and they are a small handful, all of which have tributaries that drain into the creek. On the issue of arbitrary and capricious, if you hire scientists and they tell you you have to apply the same standards to all the tributaries, but you don't, then you're acting arbitrarily because you're not aiming. You can't be aiming at something if you don't have the science and you don't know. On the issue of Blentlinger, the court in Blentlinger analyzed the DRA legislative scheme. First, it said you could have a legislative scheme that would protect the property interest, going beyond vested rights. But second, it said it's bilateral. That's what TDRs are. The county doesn't have the money to get all the agricultural land and protect it the way it wants to. So it uses private development dollars. So the county got a benefit, and then it says, but we don't know where the property attaches to. After they are encouraging this very thing, they are encouraging, the legislative history shows they are encouraging developers to use their money to satisfy a county benefit. But then when they did the analysis of the downzoning, they literally said on the record they were going to disregard, they were going to decide zoning without considering TDR policies and the TDRs themselves. And finally, Your Honor, OLEC, equal protection. OLEC was a land use case, as this court knows. It was about easements. So the Supreme Court has said that Class of 1 claims can apply and do apply in land use cases. And with respect to all of the discussion about the amendment and its rationale and whether it's related, the reference is to attachments. This is a Rule 12 case. Those attachments were attached by the moving party, and they did not satisfy this circuit's law in Goins. Thank you. Unless the Court has questions. Thank you very much. Thank you very much.
judges: J. Harvie Wilkinson III, G. Steven Agee, James P. Jones